SALT LAKE & UTAH R. CO. et al. v. PAYSON CITY et al.

No. 5418.   Decided Feb. 16, 1926.   (244 P. 138.)

1.   MUNICIPAL CORPORATIONS—EVIDENCE HELD TO SUSTAIN FINDING OF SUFFICIENT PUBLICATION OF NOTICE OF PROPOSED IMPROVEMENT (COMP. LAWS 1917, §§ 691, 5843). In suit to enjoin city from selling premises for past-due taxes to pay for local improvement, evidence *held* sufficient to sustain finding of trial court that publication of notice of intention to make improvement was sufficient, within Comp. Laws 1917, §§ 691, 5843.

2.   MUNICIPAL CORPORATIONS. Protest to proposed improvement is properly disallowed, where title to property is in county under tax sale. [1]

3.   MUNICIPAL CORPORATIONS—PROTEST TO IMPROVEMENT MAY BE WITHDRAWN SO LONG AS RIGHT TO PROTEST IS OPEN (COMP. LAWS 1917, §§ 673, 674). Protest of property owner to proposed local improvement may be withdrawn so long as right to protest is open, in view of Comp. Laws 1917, §§ 673, 674. [2]

4.   MUNICIPAL CORPORATIONS—MERE IRREGULARITIES IN PROCEEDINGS HELD NOT BASIS FOR REFUSAL TO PAY ASSESSMENT AFTER ALLOWING IMPROVEMENT WITHOUT OBJECTION OTHER THAN ORIGINAL PROTEST. Where city has jurisdiction to levy assessment for local improvements, mere irregularities in proceedings *held* not basis for refusal to pay assessment after abutting owner has allowed work to be done without protest or objection after

[1] Citing *Cave* v. *Ogden City*, 169 P. 163, 51 Utah, 166.
[2] Distinguishing *Armstrong* v. *Ogden City*, 43 P. 119, 12 Utah, 476.

original protest filed before hearing, and without attempting
to prevent improvements. [3]

Appeal from District Court, Fourth District, Utah County;
*George P. Parker,* Judge.

Suit by the Salt Lake & Utah Railroad Company and others
against Payson City and others. Judgment for defendants,
and plaintiffs appeal.

AFFIRMED.

*R. A. Porter,* of Payson, and *J. W. Robinson,* of Provo, for
appellants.

*R. W McMullin,* of Payson, and *George W. Worthen,* of
Provo, for respondents.

GIDEON, C. J.

The appellants, plaintiffs below, seek to enjoin Payson City
and its treasurer, Sarah R. Stark, from proceeding to sell
certain premises belonging to the appellants. The premises
are located in Payson City, and the threatened sale is for
past-due taxes levied to pay for local improvement. The
trial court found the issues in favor of the defendants and
entered judgment dismissing appellants' complaint. From
that judgment this appeal is prosecuted.

It is contended that Payson City did not acquire jurisdic-
tion to make the improvement nor to levy the tax against the
premises of appellants. Two grounds are urged in support
of that claim: (a) That the notice of intention was not pub-

_____

[3] Citing *Stott* v. *Salt Lake City,* 151 P. 988, 47 Utah, 113, and
*Branting* v. *Salt Lake City,* 153 P. 995, 47 Utah, 296.
  Corpus Juris-Cyc. References.
  [1]   28 Cyc. p. 983 n. 88.
  [2]   28 Cyc. p. 989 n. 59.
  [3]   28 Cyc. p. 991 n. 77.
  [4]   28 Cyc. p. 1173 n. 6.

lished the time required by statute; and (b) that the owners of more than two-thirds of the property abutting on the street proposed to be improved protested against the improvement within the time specified in the notice of intention. We shall consider these two claims in the light of the court's findings and the evidence in the case.

Chapter 14 of title 16, Comp. Laws Utah 1917, vests in the city councils of the munnicipalities of the state authority to make local improvements, and to levy special taxes to pay for such improvements, and also provides the method or modus operandi by which such improvements can be made and a special tax levied for the payment of the same. Section 691 of said chapter 14 provides:

"In all cases before the levy of any taxes for improvements provided for in this chapter, the city council shall give notice of intention to levy said taxes, naming the purposes for which the taxes are to be levied, which notice shall be published at least twenty days in a newspaper published within such city. Such notice shall describe the improvements so proposed, the boundaries of the district to be affected or benefited by such improvements, the estimated cost of such improvements, and designate a time when the council will consider the proposed levy. If, at or before the time so fixed, written objections to such improvements signed by the owners of two-thirds of the front feet abutting upon that portion of the street, lane, avenue, or alley to be so improved, be not filed with the recorder, the council shall be deemed to have acquired jurisdiction to order the making of such improvements."

The trial court found:

"* * * Said notice of intention was published in the Paysonian, a weekly newspaper of general circulation published every week at Payson, Utah, and said notice of intention was published in the regular and entire issue of said newspaper and not in any supplement thereof for four consecutive weeks commencing with the issue dated August 1, 1918, and ending with the issue dated August 22, 1918; and the issue dated August 1, 1918, was published at least first on August 2, 1918, and the last of said four consecutive issues was published on August 22, 1918."

It quite conclusively appears that this weekly publication was distributed to the subscribers by and through the United States mail. It also appears that the issue of that paper dated August 1, 1918, was not published on that date, but was printed and run through the press some time between 12

o'clock midnight of August 1st and 9 a. m. of August 2d. The city recorder testified, and his testimony in that respect is not disputed, that he obtained a copy of that issue of the paper in the forenoon of August 2d. The publisher of the paper testified positively that the paper was deposited in the United States post office at Payson at about noon of August 2d; that the paper was addressed to the several subscribers and was ready for distribution at that time. The court found the facts to be as testified to by the editor of the paper. The appellants seriously contend that this finding is not supported by the evidence and is contrary to the great weight of the evidence. The records in the United States post office at Payson show that this weekly issue of the Paysonian was not deposited in the post office until the forenoon of August 3d, and the deputy, or one in charge of the office, testified positively that the entry in the records was correct, and that the paper was not deposited on August 2d but was deposited on the forenoon of August 3d. The trial court saw and heard the witnesses, and was therefore better able to determine from all the facts before it as to the probability of whether the testimony of the editor of the paper was more likely to be correct than that of the officer in charge of the post office than are members of this court. The testimony of the publisher of the paper and of the deputy or person in charge of the post office was in direct conflict. In view of that state of the evidence, we do not feel justified in concluding that the trial court's finding in that regard is contrary to the weight of the evidence.

Section 691, supra, provides that notice of intention to make improvements must be published 20 days. By Comp. Laws Utah 1917, § 5843, the time in which any act provided by law is to be done is to be computed by excluding the first date and including the last. The court found that the first publication was on August 2d and the last on August 22d. By excluding the first date and including the last, the required notice was given. The notice as published specified that property owners could protest the proposed improvement up to and including August 22d, and that the council would meet on August 23d to hear and consider such protests as might

be made.  One of the appellants, the Salt Lake & Utah Rail-
road Company, on or about August 13th, filed its protest and
objection to the proposed improvement.  Another property
owner, J. W. Stringer, filed a protest on August 19th.
Other property owners protested, and their protests were left
with the city recorder at his home at about the hour of 7:30
p. m. on August 22d.  The protests made by the railroad com-
pany and Mr. Stringer and those left with the recorder on the
22d, were sufficient to defeat'jurisdiction of the city to make
the improvement if the parties making the protests had the
right to protest and if such protests were not withdrawn
prior to the termination of the time when protests could be
made.  The total number of front feet abutting on the pro-
posed improvement is admitted to be 3,918.74.  Two-thirds
of that number is 2,612.50 feet.  Between the hours of 9 p. m.
and 12 o'clock midnight on August 22d, three of the pro-
testants withdrew their objections and left written notice of
their withdrawal with. the city recorder.  These three pro-
testants had earlier on the same day signed a protest against
making the improvement.  The withdrawals, together with
the protests, were taken by the city recorder to his office on
the following morning, August 23d, and there placed among
the official files of the city.  The total number of front feet
included in the protests to the proposed improvement was
2,759.67.  We have found some difficulty in determining just
exactly the number of front feet owned by the protestants,
but the trial court in his oral review of the case stated that
number of feet was included in the protests, and that fact
does not seem to be seriously disputed.

The protest of one Joseph Crook, owning 167.66 feet, was
disallowed.  That property, at the expiration of the time when
protests could have been filed, stood on the county records
in the name of Albert Fisher.  It also appears that the
property had been sold for delinquent taxes and that an audi-
tor's deed was then outstanding for such delinquent taxes
in favor of Utah county.  It was made to appear at the trial
that Joseph Crook had occupied the property for many years
and had had since about 1910 a deed from Albert Fisher
conveying the premises to him.  This deed had not been re-

corded. It is also claimed in the argument of counsel for appellants that the county auditor's deed was void on its face, as it was made to appear that there had been a double assessment on this property. It does not definitely appear upon just what theory the council denied this protest, whether on the ground that the record title was not in Mr. Crook or whether on the ground that the record title was in Utah County. If, as a matter of fact, the title was in Utah County under a tax sale, the protest was properly disallowed under the authority of the holding by this court in *Cave* v. *Ogden City*, 169 P. 163, 51 Utah, 166. In view of our conclusion as to the right of property owners to withdraw their protests, it is not necessary to determine whether the council was justified in denying the protest of Mr. Crook.

W. J. Done, Tena Carter, and L. M. Miles by written notice withdrew their protests during the last day upon which protests could be filed, and which, as a matter of fact, were filed in the said office simultaneously with the protests. It is the contention of the appellants, and their argument is based upon that theory, that after a sufficient number of protests had been filed to defeat the jurisdiction protestants cannot re-establish jurisdiction in the city by withdrawing protests theretofore made; the contention of appellants being that the owners of 2,759.67 feet had actually protested the improvement, and that this was sufficient to defeat jurisdiction if the council erred in denying Mr. Crook's protest or erred in holding that Mr. Done, Mrs. Carter, and Mrs. Miles could by withdrawing their protests give the city jurisdiction to make the improvement.

Appellants rely upon the opinion of this court in *Armstrong* v. *Ogden City*, 43 P. 119, 12 Utah, 476, as authority for the contention that a protestant cannot withdraw his protest so as to vest jurisdiction in the city to make the improvement; that is, cannot withdraw his protest after a sufficient number of owners have protested to defeat jurisdiction so as to reinvest the city with jurisdiction to make the improvement. It appears in that case that the effort to withdraw the protest was made after the time fixed by the notice for the hearing of protests. In the instant case the withdrawal of protests,

if not filed simultaneously with the protests, were filed during the last day on which protests could be made and before the time specified in the notice when the council would meet to consider such protests. The opinion in that case does not, therefore, decide the particular question presented.

Another case strongly relied on by appellants is *Hoover* v. *Newton* (Mo. App.) 193 S.W. 895. The facts in that case disclose that the attempted withdrawal of a protest was ''four days after the expiration of the time in which said remonstrance was required to be filed.'' The Supreme Court of Missouri, in an earlier decision, *City of Sedalia* v. *Montgomery*, 88 S. W. 1014, 127 S. W. 50, 227 Mo. 1, held that a property owner had the right to withdraw a protest at any time prior to the date fixed for the filing of protests. In that opinion the court affirmed the judgment of the Circuit Court of Appeals. 88 S. W. 1014, 127 S. W. 50, 227 Mo. 1.

There is some conflict in the authorities on the particular question now under consideration.

The provisions of our statute are such that, in our judgment, the property owner has the right, so long as the right to protest was open, to either make his protest or withdraw it as he might desire. By section 673 of chapter **3** 14, power is vested in the city council to make an improvement such as was made by Payson City in this case, and by section 674 of the same chapter authority to levy and collect special taxes to pay for the improvement is likewise vested in the city council. That jurisdiction or right exists unless it is defeated by the affirmative act of owners of two-thirds of the front feet abutting upon such proposed improvement. In other words, the right to make the improvement exists, and the right to levy the tax exists, and it is only defeated by the affirmative act of the property owners. There can be no question that the property owners who withdrew their protests had the right to protest the improvement, and, in our judgment, likewise had the right to withdraw their protests at any time before the time for filing protests had expired. It may be seriously doubted, under the particular wording of section 691, supra, whether the property owners did not have until the meeting of the council to with-

draw the protests made notwithstanding the statement in the notice of intention that protests must be filed on August 22d.

Among the cases cited in support of the respondents' contention are the following: *Hawley* v. *City of Butte,* 164 P. 305, 53 Mont. 411; *City of Valdosta* v. *Harris,* 119 S. E. 625, 156 Ga. 490; *Wilson* v. *Borough of Collingswood,* 77 A. 1033, 80 N. J. Law, 626; *Rodgers* v. *City of Ottowa,* 109 P. 765, 83 Kan. 176; *City of New Orleans* v. *Stewart,* 18La. Ann. 710; *In re Central Drainage Dist.,* 113 N. W. 675, 134 Wis. 130; *Dunham* v. *Fox,* 69 N. W. 436, 100 Iowa, 131. An examination of these authorities will indicate that courts under statutes very similar to ours have generally held that a protestant has the right to withdraw his protest at any time before the expiration of the time for filing the same, and that by so doing the municipality acquires jurisdiction to make the improvement. We therefore conclude that the contention of appellants that the city was without jurisdiction to make the improvement cannot be upheld.

The other objections of appellants go merely to irregularities, and under the facts appearing in this record cannot now be invoked by appellants. It indisputably appears that the improvement was completed in the fall of 1919, and the final ordinance confirming the levy of the taxes was enacted in May, 1920. These appellants as property owners knew of the improvement, knew what was being done to improve the street in front of their property, and no protests or objections were made before the city council after filing the protests on the evening of August 22, 1918, or by instituting any action to prevent the making of the improvement at that time or at any later date, nor until 1925, when an effort was made to collect the taxes levied for such local improvement. Appellants' right to maintain this action at this late date should be ruled against them under the authority of *Stott* v. *Salt Lake City,* 151 P. 988, 47 Utah, 113, and *Branting* v. *Salt Lake City,* 153 P. 995, 47 Utah, 296.

Judgment affirmed, with costs.

THURMAN, FRICK, CHERRY, and STRAUP, JJ., concur.